IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES D. DINICOLA,                          )
        Petitioner,                        )
                             )
        v.                                 )      CIVIL ACTION NO. 14-57
STEVEN GLUNT,                               )      Judge Arthur J. Schwab
et al.,                                     )
        Respondents.                       )

**O P I N I O N**

Before this Court is a petition for a writ of habeas corpus filed by Petitioner, James D.

Dinicola, pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA").  After careful consideration, the Court concludes that

Petitioner is not entitled to habeas relief.  Therefore, his petition is denied.  A certificate of

appealability also is denied.

I.      **Background**[1]

On March 11, 2010, Petitioner appeared before the Court of Common Pleas of Erie

County and pleaded guilty to charges of rape of a child, sexual intercourse with a child,

endangering the welfare of a child, and corruption of minors.  The victim in the case was

Petitioner's stepdaughter, who was aged 11 and 12 at the time of the offenses.  The trial court

found Petitioner to be a sexually violated predator ("SVP").  Petitioner impregnated the victim

and information in the record states that DNA testing indicated that the probability of Petitioner

being the father of the victim's child was 99.999995%.  The court sentenced Petitioner to a total

---

[1] Respondents have submitted paper copies of the relevant state court records. Those documents are
indexed and numbered 1 through 49, and shall be cited herein as "SCR No. __ ." Respondents also have
submitted the relevant transcripts.

1

aggregate sentence of 21 to 42 ½ years' imprisonment. (SCR No. 29, <u>Commonwealth v. Dinicola</u>, No. 2789-2008, slip op. at 1-2 (C.P. Erie Nov. 15, 2010) ("<u>Dinicola I</u>"); <u>see also</u> SCR No. 28 at 2).

While represented by appointed counsel, Nicole Sloane, Esq., Petitioner filed a timely statement of matters complained of on appeal that raised a single issue: whether the evidence presented was sufficient to sustain the trial court's designation of Petitioner as an SVP. (SCR No. 27). On November 15, 2010, the trial court issued a Memorandum Opinion in which it explained that it had appropriately determined that Petitioner was an SVP and, therefore, his appeal should be dismissed as meritless. (SCR No. 29, <u>Dinicola I</u>, No. 2789-2008, slip op. at 3-12). Thereafter, Petitioner filed a petition with the Superior Court of Pennsylvania to proceed *pro se*. The Superior Court remanded for the trial court to hold a <u>Grazier</u> hearing, at the end of which the trial court granted Petitioner's request to proceed *pro se*. (SCR No. 31).

On May 21, 2011, Petitioner filed what he called an "amended" statement of matters complained of on appeal. He contended that the trial court erred in accepting his guilty plea because it "was the result of a violation of the Fourteenth Amendment" since: (1) "the plea colloquy was deficient;" (2) "the plea was induced by threats from counsel;" and (3) "the plea was induced by county officials against his family." (SCR. No. 33).

On December 28, 2011, the Superior Court issued a Judgment Order in which it affirmed the trial court's classification of Petitioner as an SVP. As for the allegations Petitioner raised in his "amended" statement of matters complained of on appeal, the Superior Court concluded that they were "waived as they were not raised within a valid Rule 1925(b) statement." (SCR No. 38, <u>Commonwealth v. Dinicola</u>, Nos. 1457 & 1462 WDA 2010, slip op. at 3 (Pa.Super. Dec. 28, 2011) ("<u>Dinicola II</u>"). To this end, the Superior Court explained:

2

As previously noted, we remanded this appeal for a <u>Grazier</u> hearing. The trial court granted Dinicola's petition to proceed *pro se*. Dinicola, acting *pro se*, did not seek leave to file an amended Rule 1925(b) statement either with this court or with the trial court. An amended or supplemental Rule 1925(b) may only be filed "upon application of the appellant and for good cause shown[.]" Pa.R.A.P, Rule 1925(b)(2), 42 Pa.Cons.Stat.Ann. As Dinicola has never applied for such relief, his amended Rule 1925(b) statement is of no legal consequence and any issues that were not preserved in his prior 1925(b) statement are therefore waived.[5]

> [5] Under the circumstances of this case, we decline to find that Dinicola's appellate counsel was ineffective *per se* pursuant to Rule 1925(c) and <u>Commonwealth v. Burton</u>, 973 A.2d 428 (Pa.Super. 2009) (*en banc*), for failing to raise the issues in Dinicola's amended statement. It is not apparent from the face of the record that there could be no valid strategy designed to effect Dinicola's interests which involved not raising these additional issues.

(<u>Id.</u>)

In June 2012, Petitioner filed a *pro se* petition for relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.Cons.Stat. § 9541 *et seq*. (SCR No. 40). The trial court appointed William J. Hathaway, Esquire, to represent him. Attorney Hathaway subsequently filed a "no-merit" letter and a motion to withdraw pursuant to <u>Commonwealth v. Turner</u>, 544 A.2d 927 (Pa. 1988) and <u>Commonwealth v. Finley</u>, 550 A.2d 213 (Pa.Super. 1988), which establish the procedures for withdrawal of court-appointed counsel in a collateral attack of a judgment of sentence when counsel determines that the petitioner is raising or wants to raise issues that are without merit. (SCR No. 42). The court issued an Opinion and Notice of Intent to Dismiss PCRA Without a Hearing Pursuant to Pa.R.Crim.P. 907(1). (SCR No. 43). A "defendant may respond to the [court's] proposed dismissal [of his PCRA petition] within 20 days of the date of the notice." Pa.R.Crim.P. 907(1). Petitioner did not file a response. The court subsequently permitted Hathaway to withdraw and, on July 30, 2012, it denied the PCRA petition. (SCR No. 45).

Petitioner filed a *pro se* appeal to the Superior Court in which he raised the following

seven claims:

1. Whether the Commonwealth violated Appellant's Fifth Amendment right to grand jury presentment, pursuant to the Supremacy Clause Article 6, Clause 2, and the Bill of Rights of the United States Constitution?

2. Whether the trial court erred in its failure to comply with Pa.R.A.P. Rule 1931, resulting in inaccurate, incomplete, and fraudulently certified transcripts, which precluded any type of meaningful review, and violated Appellant's right to due process and equal protection?

3. Whether the [PCRA] court erred in accepting counsel's no merit letter?

4. Whether the trial court erred in accepting Appellant's plea, where the plea colloquy was grossly deficient, resulting in a plea that was unknowingly, unintelligently and involuntarily entered in violation of the Fourteenth Amendment of the United States Constitution?

5. Whether Appellant's guilty plea was in violation of the Fourteenth Amendment where the plea was induced by threats from counsel?

6. Whether Appellant's guilty plea was in violation of the Fourteenth Amendment where the plea was induced by threats against Appellant's family by county officials?

7. Whether all prior counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment?

(SCR No. 49, <u>Commonwealth v. Dinicola</u>, No. 1590 WDA 2012, slip op. at 3-4 (Pa.Super. Aug.

22, 2013) ("<u>Dinicola III</u>") (quoting Brief for Appellant at 3)).

On August 22, 2013, the Superior Court issued a Memorandum in which it affirmed the

PCRA court's decision to deny post-conviction relief.  (<u>Id.</u> at 3-11).  It held that most of

Petitioner's claims were waived.  The Superior Court held that Claims 1, 4, and 6 were waived

because they could have been litigated on direct appeal.  (<u>Id.</u> at 5-6) (citing 42 Pa.Cons.Stat.

§§ 9543(a)(3), 9544(b)).  Because Petitioner represented himself on his direct appeal at his own

request and filed a defective "amended" 1925(b) statement, the Superior Court held that "the

failure to preserve these issues on direct appeal was not caused by counsel, but rather Appellant's

own doing." (Id. at 6). It also held that any contention that Petitioner's direct appeal counsel was ineffective (Claim 7) had no merit because Petitioner proceeded *pro se* on his direct appeal. (Id. at 7, "We agree with the PCRA court that Appellant cannot raise any claims of ineffective assistance of appellate counsel, as Appellant represented himself on direct appeal.")

The Superior Court explained that Claim 2 was waived because Petitioner did not raise it in his PCRA petition. (Id. at 4, quoting Commonwealth v. Knighten, 742 A.2d 679, 683 (Pa.Super. 1999) ("If an issue is not raised in the first instance in a PCRA Petition, we cannot consider it on appeal.")). It concluded that Claim 3, and Petitioner's contention that PCRA counsel was ineffective (Claim 7), were waived because Petitioner did not file a response to Attorney Hathaway's petition to withdraw and the PCRA court's Notice of Intent to Dismiss. (Id. at 5). The Superior Court explained:

> Failure to challenge the proposed withdrawal of PCRA counsel during this twenty-day period will preclude an appellate court from reviewing such issue. Commonwealth v. Pitts, 981 A.2d 875, 879 n.3 (Pa. 2009). Appellant did not respond to the PCRA cour''s notice of intent to dismiss, and did not object to PCRA counsel's no merit letter. Instead, he raises for the first time on appeal claims regarding the PCRA court's granting of PCRA counsel's no merit letter, as well as PCRA counsel's alleged ineffectiveness for failing to raise various claims of trial counsel''s ineffectiveness. Accordingly, these claims are waived.

(Id.)

As for Petitioner's contentions that his trial counsel was ineffective, the Superior Court held:

> Finally, we consider Appellant's remaining claims, pertaining to trial counsel's alleged ineffectiveness, *seriatim*. This Court has stated,
>
> > A PCRA petitioner may be entitled to relief if the petitioner effectively pleads and proves facts establishing ineffectiveness of prior counsel.
> > To establish ineffectiveness, a petitioner must plead and prove the underlying claim has arguable merit, counsel's

5

actions lacked any reasonable basis, and counsel's actions prejudiced the petitioner. Counsel's actions will not be found to have lacked a reasonable basis unless the petitioner establishes that an alternative not chosen by counsel offered a potential for success substantially greater than the course actually pursued. Prejudice means that, absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different.

Commonwealth v. Brown, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citations omitted), appeal denied, 63 A.3d 773 (Pa. 2013). "'A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.' Counsel is presumed to be effective and the burden is on the appellant to prove otherwise." Commonwealth v. Bedell, 954 A.2d 1209, 1211 (Pa.Super. 2008) (citations omitted).

On appeal, Appellant contends trial counsel failed to protect him "from the total denial of his Fifth Amendment right to grand jury presentment, pursuant to the Supremacy Clause, Article Six Clause Two of the United States Constitution and as the bill of rights[.]" Appellant's Brief at 31. In his PCRA petition, however, Appellant's sole discussion is as follows:

> A. This issue has not been previously litigated or waived.
>
> B. The failure to litigate this issue prior to or during trial on unitary review, or direct appeal could not have been the result of any rational strategic or tactical decision by counsel.
>
> C. The ineffective assistance of counsel so undermined the truth determining process that no reliable adjudication of guilt or innocence or appellate review could have taken place.

Appellant's Pet. For Habeas Corpus Relief & Statutory Post Conviction Collateral Relief ("PCRA Petitioner"), 6/21/12, at 7. Although Appellant's discussion cited generally the three prongs of an ineffectiveness claim, it included absolutely no discussion of how each prong applies to the facts of his case. As Appellant failed to establish any of the prongs, his ineffectiveness claim is meritless. See Bedell, 954 A.2d at 1211.

Next, Appellant argues trial counsel was ineffective for failing to "withdraw Appellant's plea when . . . Appellant was not informed of the direct consequences of pleading guilty, the elements of the crime [were not] explained to Appellant, and the Commonwealth failed to lay a factual basis for the plea[.]" Appellant's Brief at 39-40. He further alleges his "guilty plea was induced by threats from [trial] counsel[.]" Id. at 47.

This Court has stated:

A defendant is bound by the statements made during the plea colloquy, and a defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pled. Claims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only if the ineffectiveness actually caused an involuntary or unknowing plea.

Brown, 48 A.3d at 1277-78 (citations omitted).

In the instant case, the plea hearing transcript reveals that the Commonwealth advised Appellant on the record that "in pleading guilty[, he was] forever giving up [his] right to a jury trial," and the court was not bound by any plea bargain reached between him and the Commonwealth. N.T. Plea, 3/11/10, at 2, 3. The Commonwealth recited the minimum and maximum sentences for each charge. Id. at 4-5. Appellant stated that he understood the Commonwealth. Id. at 2-5.

Additionally, the Commonwealth showed Appellant the criminal information, "which set[ ] forth the legal definition as well as the factual basis for the charges[.]" Id. at 5. Briefly, the Commonwealth alleged that: (1) between July 2007 and August 2008, Appellant engaged in ongoing conduct of sexual intercourse with his step-daughter, who was less than thirteen years of age, giving rise to the rape of a child, first-degree felony charge; (2) Appellant "perform[ed] oral intercourse on [the same victim] in an ongoing course of conduct," which gave rise to an involuntary deviate sexual intercourse ("IDSI") with a child, first-degree felony charge; (3) Appellant engaged in the crimes of rape and IDSI, giving rise to a corruption of the morals of a minor, first-degree misdemeanor charge; and (4) as the guardian supervising the victim, he knowingly endangered her welfare by violating a duty of care, protection, or support. Id. at 5-7. As the Commonwealth recited these allegations, Appellant stated he pleaded guilty to each charge. Id. The court subsequently added that Appellant "was in fact the father of the victim's child[.]" Id. at 9-10. In light of the foregoing, we hold that Appellant's underlying contentions – that he "was not informed of the direct consequences of pleading guilty [and] the elements of the crime" and that "the Commonwealth failed to lay a factual basis for the plea[,]" -- are incorrect. See Appellants Brief at 39-40.

Furthermore, Appellant read and signed a "Statement of Understanding of Rights Prior to Guilty Plea," which included advisement of his rights. See Pa.R.Crim.P. 590. The Statement included the following: "I desire to plead guilty/no contest in this matter; that my plea is made voluntarily by me without any pressure or promise not reflected on this paper . . . ." Appellant's Statement of Understanding of Rights Prior to Guilty Plea, 3/11/10. The court asked Appellant if he had any questions about the statement, and Appellant replied in the negative. N.T. at 9. We hold that Appellant cannot now disavow these statements and aver that he was somehow coerced by counsel to plead guilty, and thus he has failed to establish the underlying claims of his ineffectiveness allegations have merit. See Brown, 48 A.3d at 1277-78.

(Id. at 7-11).

Next, having had no success challenging his judgment of sentence in state court,

Petitioner filed with this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. (ECF No. 4. See also Memorandum Of Law In Support of Petition, ECF No. 10). He

raises numerous claims for relief. Respondents have filed their Answer. (ECF No. 12).

Petitioner did not file a Reply. See Local Rule 2254(E)(2) (a petitioner "may file a Reply ...

within 30 days of the date the respondent files its Answer.").

## II.     Discussion

Petitioner is not entitled to relief on any of his claims. **First,** he cannot proceed with

some of them because he pleaded guilty. The U.S. Supreme Court has strictly limited the

circumstances under which a guilty plea may be attacked on collateral review, noting: "It is well

settled that a voluntary and intelligent plea of guilt made by an accused person, who has been

advised by competent counsel, may not be collaterally attacked." Bousley v. United States, 523

U.S. 614, 621 (1998) (quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984)).[2]

**Second**, some of Petitioner's claims are not cognizable in a federal habeas action,

regardless of whether he pleaded guilty. In some of his claims, Petitioner contends that his

PCRA counsel, Attorney Hathaway, was ineffective. Petitioner did not have a federal

constitutional right to counsel during his PCRA proceeding, Pennsylvania v. Finley, 481 U.S.

---

[2] In an attempt to get around the limitation his guilty plea has on his availability to receive relief on collateral review, Petitioner claims that his guilty plea was not "voluntary and intelligent." He also claims that his trial counsel was ineffective in the manner in which he represented him at the plea hearing. Although these claims have no merit whatsoever, for the reasons set forth *infra*, they must be denied by the Court because they are either procedurally defaulted or were adjudicated by the Superior Court and withstand review under AEDPA.

8

551, 555 (1987), and, for that reason, cannot receive habeas relief on a claim that his PCRA

counsel was ineffective. 28 U.S.C. § 2254(i) ("[t]he ineffectiveness of counsel during Federal or

State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising

under section 2254."). See also Coleman v. Thompson, 501 U.S. 722, 752-53 (1991) ("There is

no constitutional right to an attorney in state post-conviction proceedings. . . . Consequently, a

petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.").[3]

To the extent that Petitioner argues that certain state procedural rules or his rights under state law

or the Constitution of the Commonwealth of Pennsylvania have been violated, those claims also

are not cognizable under 28 U.S.C. § 2254, which limits the claims that a state prisoner can raise

in federal habeas to those that assert violations of the U.S. Constitution. And, to the extent that

Petitioner complains of alleged errors made during the PCRA proceeding, those claims are also

not cognizable because, as the United States Court of Appeals for the Third Circuit has

explained:

> The federal courts are authorized to provide collateral relief where a petitioner is
> in state custody or under a federal sentence imposed in violation of the
> Constitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255.
> *Thus, the federal role in reviewing an application for habeas corpus is limited to*
> *evaluating what occurred in the state or federal proceedings that actually led to*
> *the petitioner's conviction; what occurred in the petitioner's collateral proceeding*
> *does not enter into the habeas calculation.*

Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) (internal citations omitted) (emphasis

added); see also Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) ("[A]lleged errors in

collateral proceedings are not a proper basis for habeas relief from the original conviction.").

---

[3] It must be pointed that since Attorney Hathaway filed a Finley/Turner no merit letter and was permitted
to withdraw as Petitioner's counsel, Petitioner proceeded *pro se* in his PCRA proceeding and he cannot
blame Hathaway for the fact that his PCRA litigation was unsuccessful.

**Third**, most of Petitioner's claims are procedurally defaulted. This doctrine is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730, and it provides that a federal habeas claim may not be addressed by the federal court if the petitioner either: (a) failed to present it to the state court and the state court would now decline to address it on the merits because state procedural rules bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the state court declined to address the federal claim on the merits. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451 (2000); O'Sullivan v. Boerckel, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); Wainwright v. Sykes, 433 U.S. 72 (1977); Lines v. Larkins, 208 F.3d 153, 162-69 (3d Cir. 2000).

To the extent that Petitioner is raising any claim that he did not present to the Superior Court on either direct or PCRA appeal, those claims are procedurally defaulted because Petitioner failed to "exhaust"[4] them and he cannot go back to the Superior Court and raise them now (it would be "futile" because there is no available avenue for him to raise them). As for

---

[4] A federal habeas court may not grant a state prisoner's petition for a writ of habeas corpus unless he has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman, 501 U.S. at 731. See also O'Sullivan, 526 U.S. at 842-49. In order to exhaust a claim, "state prisoners must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 844-45 (emphasis added). In Pennsylvania, this requirement means that a petitioner in a non-capital case *must have presented every federal constitutional claim raised in his habeas petition to the Superior Court either on direct or PCRA appeal*. See, e.g., Lambert, 387 F.3d at 233-34. Petitioner carries the burden of proving exhaustion of all available state remedies. See, e.g., Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). Importantly, in order to do so he must demonstrate that he raised each of the claims at issue to the Superior Court through the proper vehicle, not just that he raised a federal constitutional claim before a state court at some point. See, e.g., O'Sullivan, 526 U.S. at 845 (a petitioner must have presented a claim through the "established" means of presenting a claim in state court at the time); Ellison v. Rogers, 484 F.3d 658, 660-62 (3d Cir. 2007).

those claims that Petitioner raised and which the Superior Court determined were waived, those

claims are procedurally defaulted for that reason.[5]

A petitioner who has defaulted a federal habeas claim can overcome the default, thereby

allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some

objective factor "*external to the defense*" impeded efforts to comply with the state's procedural

rule, and "actual prejudice."  See, e.g., Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477

U.S. 478, 488, 494 (1986).  An attorney's misconduct that is so severe that it fell below the

constitutional standards of effective assistance of counsel as set forth in Strickland v.

Washington, 466 U.S. 668 (1984) can establish "cause," but before a petitioner may rely upon it

he typically must have first exhausted that claim of ineffective assistance with the state court.  As

the Supreme Court has explained:

> [W]e think that the exhaustion doctrine, which is "principally designed to protect
> the state courts' role in the enforcement of federal law and prevent disruption of
> state judicial proceedings," Rose v. Lundy, 455 U.S. 509, 518 (1982), *generally*
> *requires that a claim of ineffective assistance be presented to the state courts as*
> *an independent claim before it may be used to establish cause for a procedural*
> *default. . . .*  [I]f a petitioner could raise his ineffective assistance claim for the
> first time on federal habeas in order to show cause for a procedural default, the
> federal habeas court would find itself in the anomalous position of adjudicating an
> unexhausted constitutional claim for which state court review might still be

---

[5] The procedural default doctrine prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court declined to rule on the merits of the claim because it determined that the petitioner did not comply with a state procedural rule, and that rule is independent of the federal question and adequate to support the judgment.  See, e.g., Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman, 501 U.S. at 732.  A state rule is "adequate" if:  (1) the state procedural rule was sufficiently clear at the time of the default to have put the petitioner on notice of what conduct was required; (2) the state appellate court reviewing the petitioner's claim refused to review it on the merits because the petitioner failed to comply with the rule; and (3) the state court's refusal was consistent with other decisions.  Shotts v. Wetzel, 724 F.3d 364, 370 (3d Cir. 2013); Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007). See also Beard v. Kindler, 558 U.S. 53 (2009) (discretionary state rules can be "adequate"); Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (a state procedural rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred); Brian R. Means, Federal Habeas Manual § 9B:28-49 (June 2014).

available. The principle of comity that underlies the exhaustion doctrine would
be ill served by a rule that allowed a federal district court "to upset a state court
conviction without an opportunity to the state courts to correct a constitutional
violation," Darr v. Burford, 339 U.S. 200, 204 (1950), and that holds true whether
an ineffective assistance claim is asserted as cause for a procedural default or
denominated as an independent ground for habeas relief.

Murray, 477 U.S. at 488-89 (emphasis added, parallel citations omitted).

To the extent that Petitioner relies on direct appeal counsel's (Attorney Sloane's)

ineffectiveness for failing to raise any claim, that allegation is rejected because Petitioner did not

properly exhaust claims of ineffective assistance of direct appeal counsel to the Superior Court in

his PCRA proceeding. In addition, since Petitioner wanted to and did act *pro se* in his direct

appeal, any failure to properly raise a claim to the Superior Court in that proceeding falls

squarely on his shoulders alone.

To the extent that Petitioner blames Attorney Hathaway, his court-appointed PCRA

counsel, for failing to raise any claim, that argument also has no merit. In Martinez v. Ryan, __

U.S. __, 132 S.Ct. 1309 (2012), the Supreme Court held that in states like Pennsylvania, where

state law requires that claims of ineffective assistance of trial counsel be raised in an initial-

review collateral proceeding (such as the PCRA), a petitioner may be able to establish "cause"

sufficient to overcome a procedural default of "a substantial claim of ineffective assistance at

trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that

proceeding was ineffective [under the standards of Strickland]." 132 S.Ct. at 1320.[6] Martinez

does not provide Petitioner with an avenue to establish "cause" for his default. Hathaway was

charged with exercising his professional judgment in deciding whether Petitioner had any

---

[6] The Supreme Court based its decision on what it determined to be an equitable right to seek relief from
a procedural default in a federal habeas matter. It did not hold that a petitioner has a constitutional right to
counsel in initial-review collateral proceedings such as the PCRA. Martinez, 132 S.Ct. at 1313-21.

colorable claim for PCRA relief. He also had an obligation under Rule 3.1 of Pennsylvania's Rules of Professional Conduct not to raise frivolous claims. See, e.g., Commonwealth v. Chmiel, 30 A.3d 1111, 1190-91 (Pa. 2011). But even more importantly, Hathaway was permitted to withdraw as his PCRA attorney and Petitioner, who did not file a response to the PCRA court's notice of intent to dismiss or Hathaway's request for leave to withdraw, did not object or inform the court that Hathaway did not accurately present to it the claims Petitioner wished to raise. In addition, any failure to properly raise his defaulted claims to the Superior Court when his case was on PCRA appeal is attributable solely to Petitioner since he was acting *pro se* in that appeal as well.

A petitioner may also overcome a procedural default of a claim if he can demonstrate a "miscarriage of justice." This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). Where the petitioner pleaded guilty (as in the instant case), he also must establish his actual innocence not only of the count to which he pleaded guilty, but also the other charges the government excused in the plea bargaining process. Bousley v. United States, 523 U.S. 614, 623-24 (1998). The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schulp, 513 U.S. at 316. There is no question that this is not the type of extraordinary case in which a petitioner can overcome the default of his claims by way of the miscarriage of justice exception.

**Fourth**, and finally, as for those ineffective assistance of trial counsel claims that the

Superior Court adjudicated on the merits in Dinicola III, they are denied because they withstand

review under AEDPA. The applicable standard of review is codified at 28 U.S.C. § 2254(d) and

provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1). AEDPA circumscribes a federal habeas court's review of a state

prisoner's constitutional claim when the state court adjudicated that claim on the merits and

denied it. For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State

court proceedings" when a state court has made a decision that finally resolves the claim based

on its substance, not on a procedural, or other, ground. See, e.g., Harrington v. Richter, 562 U.S.

86, 131 S.Ct. 770, 784-85 (2011); Robinson v. Beard, 762 F.3d 316, 324 (3d Cir. 2014). "Section

2254(d) applies even where there has been a summary denial." Cullen v. Pinholster, __ U.S. __,

131 S.Ct. 1388, 1402 (2011) (citing Richter, 131 S.Ct. at 786).

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze

Petitioner's ineffective assistance of trial counsel claims is governed by Strickland v.

Washington, 466 U.S. 668 (1984). Under Strickland, Petitioner must show that his trial

counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 688.

The law presumes that counsel was effective. Id. at 689. Strickland also requires that Petitioner

demonstrate that he was prejudiced by his counsel's alleged deficient performance. This requires

14

a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] proceeding would have been different." Id. at 694.

The Superior Court applied the Strickland standard when it evaluated Petitioner's claims of ineffective assistance of trial counsel. (SCR No. 49, Dinicola III, No. 1590 WDA 2012, slip op. at 7-8).[7] Accordingly, there can be no question that its adjudication withstands review under the "contrary to" clause of § 2254(d)(1). Williams v. Taylor, 529 U.S. 362, 406 (2000) ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").[8]

The only remaining inquiry for this Court is whether Petitioner has demonstrated that the Superior Court's adjudication of any of the claims at issue was an "unreasonable application of" Strickland. 28 U.S.C. § 2254(d)(1). The Supreme Court has stressed repeatedly the "highly deferential" review that this Court must accord the state court's decision in conducting the "unreasonable application" analysis:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See Lockyer, supra, at 75.
>    If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision

---

[7] Pennsylvania law for judging ineffectiveness corresponds with the Strickland standard. Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

[8] A state court decision is "contrary to … clearly established Federal law, as determined by the Supreme Court" "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," id. at 406.

conflicts with this Court's precedents. It goes no farther…. *As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Richter, 131 S.Ct. at 786-87 (parallel citations omitted) (emphasis added). See also Burt v.

Titlow, __ U.S. __ , 134 S.Ct. 10, 15-16 (2013). This Court also is mindful that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689; Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. [Id.] Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. at 788 (parallel citations omitted).

The Superior Court's adjudication of Petitioner's ineffective assistance of trial counsel

claims was not "so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." Richter,

131 S.Ct. at 786-87. Accordingly, its determination that Petitioner was not entitled to relief on

his claims of ineffective assistance of trial counsel was not an "unreasonable application of"

Strickland.

## III. Certificate Of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for

appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides

that "[a] certificate of appealability may issue ... only if the applicant has made a substantial

showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability is denied with respect to each claim.

An appropriate Order follows.


Date: February 4, 2015                              s/Arthur J. Schwab
                                                    Arthur J. Schwab
                                                    United States District Judge